**Alfred Davis WEBB, Appellant,**

v.

**Robert C. WHITEHURST, Appellee.**

No. 4848.

Court of Civil Appeals of Texas.

Waco.

Nov. 6, 1969.

Rehearing Denied Dec. 4, 1969.

Robert L. Strickland, San Antonio, for appellant.

Kelsoe & Stone, Gardere, Porter & DeHay, Dallas, for appellee.

## OPINION

HALL, Justice.

This action was brought by appellee to recover for damages sustained in an intersectional collision between automobiles driven by him and appellant.

Jury trial resulted in findings of several acts of negligence by appellant, including the failure to obey a stop sign, that proximately caused the collision. None of those findings are challenged.

Additionally, the jury found that appellee "failed timely to apply the brakes on his vehicle immediately before the collision;" and that this act was negligence and a proximate cause. On motion, the trial court disregarded these findings, and rendered judgment for appellee. Appellant asserts that there is probative evidence to support these findings and that the trial court erred in its ruling.

Most of appellee's argument in support of the trial court's action is grounded upon an erroneous assumption that the jury found he was keeping a proper lookout.

The jury was asked whether it found from a preponderance of the evidence that appellee failed to keep a proper lookout, and answered, "No." The negative answer to this issue simply means, in law, that appellant failed to carry his burden of proving the fact inquired about, and is *not* a finding that appellee kept a proper lookout. C. & R. Transport, Inc., v.

Campbell, (Tex.Sup.Ct., 1966) 406 S.W.2d 191, 194. Moreover, in determining the "no evidence" question before us, we may not consider nor give weight to the jury's findings on other issues. Enloe v. Barfield (Tex.Sup.Ct., 1967) 422 S.W.2d 905, 907.

The collision occurred about 1:00 P.M., on a clear, dry, Sunday afternoon, at a suburban intersection of paved roads. Appellant was driving his vehicle to the rear and to the right of another vehicle with which he was either racing or otherwise engaged in inattentive conduct as he approached the intersection from appellee's right, on a street named Oates Drive.

The disinterested witness Craig was operating an automobile in front of appellee, between appellee and the intersection. He said that he and appellee were traveling at 45 miles per hour, and that appellee's vehicle was three and a half to four "medium-size car lengths" behind him. Craig testified that as appellant's vehicle and the other on Oates Drive neared the intersection, they were three and a half to four "big-size car lengths" apart. He said that his first notice of anything wrong was when he saw the two cars on Oates Drive approaching the intersection "traveling quite fast and it didn't appear that they were going to be able to stop;" that at that time he was seven or eight "medium-size car lengths," or farther, from the intersection; that "I slammed the brakes on * * * probably locking them. * * * As suddenly as that car would be stopped, I stopped it." Craig's vehicle then slid on the gravel on the road, partly on an improved shoulder to his right, into and through the intersection, passing behind appellant's vehicle.

Appellee testified that his vehicle was between fifty and seventy feet behind Craig's car; that they were both traveling about forty miles per hour; that the terrain was flat; that when he saw Craig apply his brakes, Craig was about four car lengths from the intersection. He said, "when I saw him put on his brakes and turn to the right, I was between fifty and seventy feet from him and I kept on going * * * I pulled more or less to the left and kept going. * * * Now, there was plenty of room for me to get around there and I could go over on my left * * * The car in front of me, it took a while but he made an effort and I had to—*I knew there was something ahead,* but he reacted to it right. I reacted to the left. By the time I got to the intersection I saw what was in—I saw these two cars coming. * * * In other words he made an effort to stop and he was—not only made an effort, but he did stop. * * * He stopped in time but I didn't." Appellee stated that when he was thirty feet from the intersection, he saw the two cars approaching on Oates Drive at a "rapid rate of speed," and applied his brakes; that he was "something less than two car lengths" from the intersection when he applied his brakes; that by that time he had "gone around" the Craig vehicle and it was slightly behind him; and that his rate of travel was then "around the same speed" it had previously been.

Appellee's wife was with him at the time of the collision. She testified: "We were going around forty or forty-five miles per hour. * * * The first thing I knew the (Craig) car in front of us came almost to a stop. He stopped enough to alert us to the fact that we had to do something about it. * * * He pulled over suddenly and my first impression was, he was making a turn, but it was a sudden thing, so I remember that we made a whirl around him or passed him while he was still there."

There is evidence that as appellee passed the Craig vehicle, he moved his vehicle partially across the center line of the highway, and that it was so situated at the time of the collision.

We hold that the jury findings in question are supported by evidence of probative force, and that the trial court erred in disregarding them.

Appellee brings forward a cross-assignment in which he contends the findings in question are against the overwhelming preponderance of the evidence.

Undoubtedly the jury determined that under the circumstances appellee should have, and a person of ordinary prudence would have, applied his brakes at the moment he was alerted by Craig's actions that "there was something ahead." Of course, appellee's immediate problem at that moment was to avoid colliding with Craig, who was directly in front of him. This he handled by veering to his left. The record shows that after appellee moved to the left of the Craig vehicle and until he passed it, the actual danger presented by the cars approaching from Oates Drive was obscured from his view. Appellant testified that he did not and could not see appellee's car until it was "right there at my door" because it was hidden from his view by the Craig vehicle. As soon as appellee passed Craig he saw appellant's car and the other traveling toward and into the intersection. He immediately applied his brakes, and succeeded in avoiding collision with the first car. Appellant testified that it was the skidding of the tires of appellee's car that directed his attention to it.

Craig gave this summary of the event in question: "The car in front of mine apparently speeded up to get between the two cars. The first car from Oates crossed without appearing to slow down or try to stop and the car in front of mine went between that car and the car that was behind him coming on Oates. It all happened, of course, in a split second. I was concerned that I was going to get hit by the other car, the second car coming across Oates, and I slammed on my brakes and went off to the right on the gravel and slid down the shoulder and through the intersection, or at least across Oates just South of the intersection. At the same time that was happening this second car crossed in front of me and went near the center of the intersection. The car behind me—I had a vague recollection of this, of course, because I was most concerned about getting out of the way myself—skidded past me on the left, and the two cars, of course, collided in the center of the intersection * * *."

The collision occurred in April, 1963; suit was filed in January, 1965; deposition testimony of some of the witnesses was taken in March and April, 1966; and the trial was had in May, 1968. Understandably, there are conflicts and inconsistencies in the evidence.

The jury expressly found that appellant was negligent as to lookout, speed, application of brakes, and the stop sign violation; and that all of these proximately caused the collision. The jury failed to find from a preponderance of the evidence that appellee failed to keep a proper lookout, or was following Craig too closely, or was driving at an excessive speed. The jury did find that appellee drove his vehicle to the lefthand side of the roadway within 100 feet of the intersection; but it failed to find from a preponderance of the evidence that this was negligence.

■ Without dispute in the record, appellee was suddenly confronted with a condition not of his creation that was immediately dangerous and which provided no opportunity for deliberation for a choice of course of action. After careful consideration of the entire record, we hold that the jury's findings that appellee failed to apply his brakes as soon as a person of ordinary prudence would have done so under the same or similar circumstances, and that such failure was a proximate cause, are against the overwhelming preponderance of the evidence.

We reverse and remand. Costs are taxed one-half against appellee and one-half against appellant.

Reversed and remanded.